UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSHUA ALLEN CALKINS,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

No. 2:13-CV-0360-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 16. Attorney Dana C. Madsen represents Joshua Allen Calkins (Plaintiff); Special Assistant United States Attorney Nicole A. Jabaily represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income (SSI) on May 11, 2011, alleging disability since April 15, 2009, due to "Bipolar, Dyslexia, Schizophrenia, SADS – Seasonal Afflicted Depression Syndrome, ADHD, Severe Migraines, and Panic

Attacks." Tr. 179-187, 199. Plaintiff indicated his conditions limited his ability to work because, "I don't work well with others. I get frustrated easily, I can't sit still, I see letters and numbers backwards, I get migraines about 3 times a week, and I have to stay still in a dark room when I have a migraine." Tr. 257. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) James Sherry held a hearing on April 30, 2013, Tr. 37-65, and issued an unfavorable decision on May 22, 2013, Tr. 9-30. The Appeals Council denied review on August 31, 2013. Tr. 1-5. The ALJ's May 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 11, 2013. ECF No. 1, 5.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on June 20, 1982, and was 26 years old on the alleged onset date, April 15, 2009. Tr. 179. Plaintiff went to school through the tenth grade and attended special education classes during his time in school. Tr. 261. He testified at the administrative hearing he is not able to read or write. Tr. 43. Plaintiff has two children; his youngest child, a three-year-old, resides with Plaintiff and Plaintiff's fiancé. Tr. 42. He indicated his past relevant work consists mostly of general construction, warehouse and labor work. Tr. 44-46. He last worked in 2009 as a sign holder for a tax business. Tr. 46. Plaintiff testified he stopped working because he started having more low back pain, was irritable and had more depression. Tr. 47. He later indicated he did not really have an explanation for why he was not able to work, but stated he did not like being around a lot of people and was afraid he would get in trouble or go to jail for something that would happen at work should he lose his temper. Tr. 57-58.

Plaintiff testified that, as a result of back pain, he could only walk maybe a mile and a half in one stretch, stand for 15 to 20 minutes at a time, and lift/carry about 15 to 20 pounds. Tr. 48-49. He stated his driver's license was suspended, but he was able to get around by walking, taking the bus, or getting a ride from family members. Tr. 50. Plaintiff testified he gets agitated very easily and is nervous around people. Tr. 50. He thus tries to avoid taking the bus as much as possible. Tr. 50. He stated that medications for anxiety helped "to a certain extent," Tr. 51, and counseling had helped him relieve a lot of stress, Tr. 56. Plaintiff indicated he also has migraine headaches two to three times a week, lasting up to two to three days at a time. Tr. 56. He stated medication helped his migraines, but it did not work all the time. Tr. 57.

Plaintiff testified he watches his daughter daily while his fiancé works. Tr. 51. His fiancé's sister would come over every day between 10:00 a.m. and 2:00 p.m. to help with his daughter. Tr. 52. On a typical day, Plaintiff cares for his daughter, tries to clean his house, watches TV, and plays video games. Tr. 51-52. He indicated he can vacuum and is responsible for doing the laundry. Tr. 52. Plaintiff testified he quit drinking alcohol about a year and a half prior to the administrative hearing and quit smoking marijuana almost four years prior to the administrative hearing. Tr. 53.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a

preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see*, *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

///

**ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2009, the alleged onset date. Tr. 11. At step two, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder/depressive disorder; schizophrenia, not otherwise specified; alcohol and cannabis dependence; learning disorder/dyslexia; and borderline intellectual functioning. Tr. 11. The ALJ specifically determined Plaintiff's migraine headaches and back pain were not severe impairments. Tr. 11-13. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 14.

The ALJ assessed Plaintiff's RFC and determined Plaintiff could perform a full range of work at all exertional levels. Tr. 16. The ALJ, however, found Plaintiff had the following nonexertional limitations: he can perform jobs that allow him to avoid concentrated exposure to hazards such as moving machinery and unprotected heights due to his history of migraine headaches; he can perform jobs that involve three-step instructions and simple, repetitive, routine tasks; he learns best by demonstration, hands-on experience, or verbal rather than written instructions; he can perform jobs that require occasional and simple decision-making and occasional and simple changes in the work setting; he can perform jobs that allow him more time to learn procedures and jobs that do not involve fast-paced production requirements; and he can perform jobs that involve superficial contact with the public, coworkers, and supervisors. Tr. 16.

At step four, the ALJ found Plaintiff was able to perform his past relevant work as a warehouse worker and construction worker II. Tr. 28. Alternatively, at step five, the ALJ determined that, given Plaintiff's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy, including the light exertional level, unskilled jobs of advertising material distributor, office cleaner I and electrical assembler, that Plaintiff could

perform. Tr. 28-29. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 15, 2009, the alleged onset date, through the date of the ALJ's decision, May 22, 2013. Tr. 29.

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly discounting his symptom testimony; (2) failing to accord appropriate weight to "other source" opinions; and (3) failing to provide specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of Dr. Pollack.

## DISCUSSION

### A. Plaintiff's Credibility

Plaintiff argues the ALJ erred by improperly discounting his symptom testimony. ECF No. 15 at 10-12.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff was not fully credible. Tr. 27. The ALJ specifically determined Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. Tr. 17.

The ALJ first noted the objective medical evidence of record was not consistent with the degree of limitation Plaintiff alleged in his application. Tr. 27. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).

The ALJ discussed the evidence of record in great detail. Tr. 17-27. As to Plaintiff's physical functioning, the ALJ noted that on April 21, 2010, state agency medical consultant Howard Platter, M.D., opined that Plaintiff had no exertional limitations. Tr. 23, 370. State agency medical consultant, Wayne Hurley, M.D., affirmed the opinion that Plaintiff had no exertional limitations on February 1, 2012. Tr. 23, 115. On August 16, 2011, William Bomberger, PA-C, stated he saw no physical reason why Plaintiff could not engage in job retraining, but indicated he was not comfortable addressing Plaintiff's mental functioning because he was not a mental health provider. Tr. 23, 476. On May 4, 2012, Plaintiff informed Mr. Bomberger he felt he had no physical limitations in his ability to perform work activities, and Mr. Bomberger opined that Plaintiff was physically able to work. Tr. 12, 24, 486-487.

With respect to Plaintiff's mental health, state agency psychological consultant Mary Gentile, Ph.D., opined on June 11, 2010, that Plaintiff was capable of simple tasks with only superficial contact with the public and coworkers. Tr. 25, 399. On May 22, 2010, Jay M. Toews, Ed.D., opined Plaintiff was able to perform a variety of routine and repetitive tasks, learned best with demonstrated instruction, was able to maintain superficial interaction with coworkers, and was able to tolerate supervision. Tr. 25-26, 381. On August 29, 2011, Samantha Chandler, Psy.D., determined Plaintiff was capable of performing

unskilled work; he likely had the ability to interact appropriately with supervisors, coworkers, and the public, particularly when he was compliant with medication; he had the ability to follow three-step instructions and displayed normal cognitive functioning; and he could sustain concentration and attention for an eight-hour day and a five-day work week, although he would likely have difficulty with complex concepts and would do better with minimal reading and spelling requirements. Tr. 26, 472. On January 29, 2012, state agency psychological consultant Michael Brown, Ph.D., opined Plaintiff was capable of unskilled work activity with only superficial contact with the public and coworkers, but should have direct supervision and additional time to learn new tasks. Tr. 25, 116. It was appropriate for the ALJ to conclude that the weight of the objective medical evidence of record did not support allegations of total disability by Plaintiff.

The ALJ next indicated statements Plaintiff had made were not consistent with his allegation that physical and mental impairments prevented him from working. Tr. 27. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility with respect to his claim of disabling pain. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). The ALJ noted that although Plaintiff alleged physical and mental limitations at the administrative hearing, he testified his mental health symptoms were his biggest barrier to employment, yet repeatedly stated throughout the record that his mental health symptoms improve and he does well when he takes medication. Tr. 27. The ALJ also noted Plaintiff informed Mr. Bomberger he felt he had no physical limitations in his ability to perform work activities on May 4, 2012. Tr. 12, 486. In addition, Plaintiff informed a vocational services case manager he thought his barrier to employment was his criminal record and lack of resume, not limitations from physical and mental symptoms. Tr. 27, 404. The ALJ concluded it appeared Plaintiff's difficulty in obtaining work was due to his poor work history and criminal record, not from physical or mental symptoms. Tr. 27. The ALJ noted

another inconsistent statement by Plaintiff as well. The ALJ indicated Dr. Chandler observed Plaintiff's report of a history of smoking marijuana on a daily basis until age 24 was inconsistent with Plaintiff's CHAS treatment records. Tr. 19, 469. Untruthfulness or inconsistencies regarding alcohol or substance abuse has been held to support an ALJ's decision that a claimant's testimony lacks credibility. *Veruzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). It was proper for the ALJ to cite Plaintiff's inconsistent statements in support of the determination that Plaintiff was not fully credible in this case.

The ALJ also indicates Plaintiff expressed improvement of his mental health symptoms with medication. Tr. 27. An ALJ may rely on the effectiveness of treatment to find a claimant's testimony unpersuasive. 20 C.F.R. § 416.929(c)(3) (the effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms), *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a claimant's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (impairments controlled by treatment cannot be considered disabling). Plaintiff reported good results from mental health medications to Dr. Toews and Dr. Chandler. Tr. 380, 470. Moreover, Plaintiff testified at the administrative hearing that medications for anxiety helped "to a certain extent," Tr. 51, and counseling had helped him relieve a lot of stress, Tr. 56. It was proper for the ALJ to rely on Plaintiff's indication of improvement of symptoms as a basis to find him less than fully credible in this case.

The ALJ further held Plaintiff's activities of daily living were inconsistent with a finding of disability. Tr. 28. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated records from Leroy O. Miller, MS, LMHC, NCC, reflect Plaintiff was able to play video games all day and most of the

night, go for walks, watch television and cook. Tr. 18, 535-536. The ALJ further noted records from Dr. Toews reflect Plaintiff was fully independent in his basic self-care, was able to plan and prepare simple meals, could perform a full range of housework and laundry, could shop independently and could perform routine maintenance and repair around the house. Tr. 18, 380. The ALJ indicated records from Dr. Chandler reveal Plaintiff did not need help or encouragement to do the dishes once a day, vacuum every other day, clean the bathroom, do laundry, and pick up his daughter's toys. Tr. 19, 471. Plaintiff stated he went to the grocery store and walked to the park with his daughter once or twice a week, described his hobby as making car models, and indicated he had friends and would see his mother and brother one to three times per week. Tr. 19, 471. The ALJ also noted Plaintiff described full daily activities to Dennis R. Pollack, Ph.D., in 2013, including caring for his young daughter, playing board games, playing video games, conducting household chores, operating a computer, and operating a typewriter. Tr. 26, 562-563. This level of activity is not consistent with Plaintiff's claim of disability.

The ALJ's opinion additionally mentions instances of Plaintiff's tendency to exaggerate his symptoms. Tr. 13, 20, 24, 26. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding an ALJ's decision to discredit a claimant's statements was supported by the claimant's tendency to exaggerate). The ALJ noted an August 30, 2012, report from Mr. Bomberger showed three out of three positive Waddell signs, "which suggested that the claimant might be exaggerating his symptoms." Tr. 13, 494. As indicated by the ALJ, Mr. Bomberger again observed positive Waddell signs, indicative of possible exaggeration of symptoms, on December 5, 2012. Tr. 13, 24, 502. The ALJ also noted Dr. Pollack's 2013 psychological evaluation produced MMPI results suggesting Plaintiff did not understand the items, had many unusual experiences or was attempting to present himself in a most unfavorable light. Tr. 20, 564. Dr. Pollack concluded Plaintiff's

malingering testing suggested Plaintiff was either not making a good effort or his poor score was a result of his perceptual problems. Tr. 20, 26, 565. The fact that the record reflects incidents of possible exaggeration of symptoms by Plaintiff, as documented by the ALJ, discounts Plaintiff's assertion of disabling symptoms.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds the ALJ provided ample clear and convincing reasons that are fully supported by the evidence of record for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by concluding Plaintiff's subjective complaints regarding the extent of his symptoms and limitations were not entirely credible in this case.

**B. Other Source Opinions**

**1. William Bomberger, PA-C**

Plaintiff next contends the ALJ erred by failing to accord proper weight to the opinions of William Bomberger, PA-C, regarding Plaintiff's functioning in December 2012 and January 2013. ECF No. 15 at 12-13. Plaintiff argues the opinions expressed by Mr. Bomberger on those occasions demonstrate he is more limited from a physical standpoint than what was determined by the ALJ in this case. ECF No. 15 at 13.

Only acceptable medical sources can give medical opinions. 20 C.F.R. § 416.927(a)(2). Mr. Bomberger, a certified physician assistant, is not an acceptable medical source; therefore, his opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations.

20 C.F.R. §§ 404.1513, 416.913. Mr. Bomberger is an "other source." An ALJ must provide germane reasons to reject other source evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

As stated by the ALJ, Mr. Bomberger opined in August 2011 that there was no physical reason why Plaintiff could not engage in job retraining through Work First. Tr. 23, 476. During a May 4, 2012, examination with Mr. Bomberger, Plaintiff informed Mr. Bomberger he felt "physically able to work, lift, stand, etc." Tr. 23, 486. Mr. Bomberger reported Plaintiff was physically able to work at that time. Tr. 23-24, 486-487. The ALJ accorded the August 2011 and May 2012 reports "great weight" because they were consistent with the objective findings upon examination as well as Plaintiff's own statements. Tr. 24. The August 2011 and May 2012 opinions of Mr. Bomberger are also consistent with the April 2010 medical report of Dr. Platter and February 2012 report of Dr. Hurley which held that Plaintiff had no exertional limitations. Tr. 23, 115, 376.

On December 5, 2012, Plaintiff complained to Mr. Bomberger of low back pain. Tr. 24, 501. Although Mr. Bomberger concluded Plaintiff's "Lumbago" limited the work Plaintiff could perform, he noted concerns about Plaintiff's possible symptom exaggeration as a result of Plaintiff's two out of three positive Waddell signs. Tr. 24, 502. The ALJ accorded this December 5, 2012, report of Mr. Bomberger little weight because it was inconsistent with the objective evidence of record, including Mr. Bomberger's treatment notes, and findings on x-ray, Tr. 516, 528, and there were concerns of possible symptom exaggeration. Tr. 24. Additionally, the ALJ indicated Mr. Bomberger's statement on December 5, 2012, was not a function-by-function assessment, and it therefore provided little information regarding what exact limitations he believed Plaintiff suffered from the alleged back pain. Tr. 24. The Court finds the foregoing reasons of the ALJ are germane reasons for rejecting Mr. Bomberger's December 5, 2012, report.

///

On January 8, 2013, Mr. Bomberger completed Housing and Urban Development (HUD) paperwork on behalf of Plaintiff and checked boxes indicating Plaintiff had an inability to engage in any substantial activity due to a medically determinable physical or mental impairment which substantially impeded his ability to live independently and was expected to continue for a long time. Tr. 24, 530. A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible). As noted by the ALJ, the check-box responses were not consistent with Mr. Bomberger's previous assessments of Plaintiff's capacity in narrative format and there was no correlated change in the treatment record that would explain the drastic revision of Mr. Bomberger's previous narrative opinions. Tr. 24. The ALJ additionally stated Mr. Bomberger appeared to have filled out the form in empathy with Plaintiff's attempt to have his new puppy deemed a service animal for purposes of his living situation.[1] Tr. 24. Finally, the ALJ noted the statement was inconsistent with the overall objective evidence of record, including Mr. Bomberger's observations of Plaintiff on examination. Tr. 25. The Court finds the ALJ gave germane reasons for rejecting Mr. Bomberger's January 2013 HUD form report as well.

Based on the foregoing, the ALJ provided germane reasons for rejecting Mr. Bomberger's "other source" opinions from December 2012 and January 2013. The

---

[1]Plaintiff informed Mr. Bomberger on December 26, 2012, he had gotten a new puppy and needed a letter for his landlord in order for the puppy to be deemed a companion animal. Tr. 24, 519. On December 26, 2012, despite the fact that there is no indication in the record that a service animal had previously been recommended for Plaintiff, Mr. Bomberger wrote a letter to Plaintiff's landlord indicating that a dog would help Plaintiff function. Tr. 24, 517.

record does not support a finding that Plaintiff was incapable of performing work at all exertional levels. Accordingly, the Court finds the ALJ's physical RFC determination is in accord with the weight of the record evidence and free of legal error.

**2. Leroy Miller, MS, LMHC, NCC**

The argument portion of Plaintiff's opening brief does not present a supported contention with respect to the "other source" opinions of Mr. Miller. ECF No. 15 at 9-14. Mr. Miller is only mentioned in the last sentence of the argument section of the brief. ECF No. 15 at 14. Plaintiff's reply brief also fails to provide specific argument with respect to Mr. Miller. ECF No. 17 at 5-6.

The Ninth Circuit has indicated it will not "consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Indust., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). Applying this standard, the Ninth Circuit has refused to address claims that were only "argue[d] in passing," *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n. 4 (9th Cir. 2010) , or that were "bare assertion[s] . . . with no supporting argument," *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008).

The Court declines to address any assertion by Plaintiff with respect to Mr. Miller because Plaintiff has failed to argue any issue as to Mr. Miller with specificity. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

**C. Psychological Limitations**

Plaintiff lastly asserts the ALJ erred by failing to accord proper weight to the opinions of examining medical professional Dennis R. Pollack, Ph.D., regarding Plaintiff's psychological limitations. ECF No. 15 at 13-14. Plaintiff argues the opinions expressed by Dr. Pollack demonstrate he is more limited from a psychological standpoint than what was determined by the ALJ in this case. ECF No. 15 at 14.

The ALJ concluded the objective medical evidence did not support the level of mental limitation alleged by Plaintiff. The ALJ found that although Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in concentration, persistence and pace, Plaintiff retained the RFC to perform jobs that allow him to avoid concentrated exposure to hazards such as moving machinery and unprotected heights, involve three-step instructions and simple, repetitive, routine tasks (he learns best by demonstration, hands-on experience, or verbal rather than written instructions), require occasional and simple decision-making and occasional and simple changes in the work setting, allow him more time to learn procedures, do not involve fast-paced production requirements, and involve only superficial contact with the public, coworkers, and supervisors. Tr. 14, 16. The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence. *See infra*.

On April 23, 2013, Dr. Pollack completed a medical report which determined Plaintiff had "very serious emotional problems." Tr. 566. Dr. Pollack filled out a Mental Medical Source Statement and checked boxes indicating Plaintiff had marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 568. The ALJ appropriately accorded Dr. Pollack's marked limitation findings little weight. Tr. 26.

First, the ALJ indicated Dr. Pollack's opinion was not consistent with the overall objective evidence of record. Tr. 26. As stated above, state agency psychological consultant Dr. Gentile opined on June 11, 2010, that Plaintiff was capable of simple tasks with only superficial contact with the public and

coworkers, Tr. 399; on January 29, 2012, state agency psychological consultant Dr. Brown opined Plaintiff was capable of unskilled work activity with only superficial contact with the public and coworkers, but should have direct supervision and additional time to learn new tasks, Tr. 116; Dr. Toews opined on May 22, 2010, that Plaintiff was able to perform a variety of routine and repetitive tasks, learned best with demonstrated instruction, was able to maintain superficial interaction with coworkers, and was able to tolerate supervision, Tr. 381; and, on August 29, 2011, Dr. Chandler determined Plaintiff was capable of performing unskilled work, likely had the ability to interact appropriately with supervisors, coworkers, and the public, particularly when he was compliant with medication, had the ability to follow three-step instructions and displayed normal cognitive functioning, and could sustain concentration in attention for an eight-hour day and a five-day work week, although he would likely have difficulty with complex concepts and would do better with minimal reading and spelling requirements, Tr. 472. The conclusions of the foregoing medical professionals, which equates to the vast majority of the mental health evidence of record, conflict with the marked limitations assessed by Dr. Pollack.

The ALJ also noted Dr. Pollack's opinion was inconsistent with Plaintiff's own report of full daily activities. Tr. 26. Plaintiff indicated to Dr. Pollack that he cared for his young daughter, played board games, played video games, conducted household chores, operated a computer, and operated a typewriter. Tr. 26, 562-563. As noted above, other evidence of record revealed Plaintiff's daily activities included playing video games all day and most of the night, going for walks, watching television and cooking, Tr. 18, 535-536; Plaintiff was fully independent in his basic self-care, was able to plan and prepare simple meals, could perform a full range of housework and laundry, could shop independently and could perform routine maintenance and repair around the house, Tr. 18, 380; Plaintiff was able to do the dishes once a day, vacuum every other day, clean the bathroom, do laundry,

and pick up his daughter's toys, Tr. 19, 471; and Plaintiff stated he went to the grocery store and walked to the park with his daughter once or twice a week, described his hobby as making car models, and indicated he had friends and would see his mother and brother one to three times per week, Tr. 19, 471. This level of activity contradicts Dr. Pollack's assessment of marked limitations.

The ALJ further noted Dr. Pollack observed that many of Plaintiff's test results appeared invalid, as if Plaintiff were attempting to represent himself in an unfavorable light. Tr. 26. Dr. Pollack's evaluation produced MMPI results suggesting Plaintiff did not understand the items, had many unusual experiences or was attempting to present himself in a most unfavorable light. Tr. 564. Dr. Pollack concluded Plaintiff's malingering testing suggested Plaintiff was either not making a good effort or his poor score was a result of his perceptual problems. Tr. 565. Dr. Pollack assessed marked limitations despite the evidence of possible symptom exaggeration on exam.

As noted above, it is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities, *Saelee*, 94 F.3d at 522, and this Court may not substitute its own judgment for that of the ALJ, 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair*, 885 F.2d at 604. Based on the foregoing, the ALJ did not err by giving little weight to Dr. Pollack's 2013 opinion. The medical evidence of record does not support a more restrictive mental RFC assessment. The Court finds the ALJ's RFC determination is in accord with the weight of the record evidence and free of error.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED October 29, 2014.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE